THE STATE OF OHIO, APPELLEE, *v.* BLOOMER, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.* MOSMEYER, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.* BARNES, APPELLANT.

[Cite as *State v. Bloomer,* 122 Ohio St.3d 200, 2009-Ohio-2462.]

*Criminal law — Sentencing — Mandatory postrelease control omitted from sentencing judgment.*

(Nos. 2007-0693, 2007-1415, and 2007-1439 ─ Submitted December 17, 2008 ─ Decided June 9, 2009.)

APPEAL from the Court of Appeals for Fulton County,

No. F-06-012, 2007-Ohio-1039.

APPEAL from the Court of Appeals for Hamilton County, No. C-060747.

APPEAL from the Court of Appeals for Portage County,

No. 2006-P-0089, 2007-Ohio-3362.

_____

**O'DONNELL, J.**

**{¶ 1}** Three separate cases have been consolidated for purposes of review and combined for a single opinion where we again confront the consequences of the trial court's failure to either notify an offender about postrelease control at the time of sentencing or incorporate postrelease control into its sentencing entry. The issues presented here also concern the application of R.C. 2929.191, which provides a mechanism for correcting a judgment entry if a trial court fails to notify the offender of postrelease control or to impose it.

## I. History and Overview

**{¶ 2}** R.C. 2967.28(B) requires a sentencing court imposing a prison term on a first- or second-degree felony offender or certain other offenders to notify them that a period of mandatory postrelease control will be imposed by the

parole board upon release from prison.[1]   In addition, R.C. 2929.19 mandates that a court, when imposing sentence, must notify the offender at the hearing that he will be supervised pursuant to R.C. 2967.28 and that upon violating supervision or a condition of postrelease control, the parole board may impose a prison term of up to one-half of the prison term originally imposed upon the offender.  See, e.g., R.C. 2929.19(B)(3)(c) and (e).

{¶ 3}  This court has previously addressed the consequences of a sentencing court's failure to follow the requirements of these and other sentencing statutes in a series of cases beginning with *State v. Beasley* (1984), 14 Ohio St.3d 74, 14 OBR 511, 471 N.E.2d 774.  There, we considered whether the trial court's erroneous imposition of a sentence less than the minimum prescribed by statute and its subsequent correction of that sentence violated the defendant's constitutional guarantee against double jeopardy.  Id. at 75.  We recognized that "[a]ny attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void."  Id.  Because jeopardy does not attach to a void sentence, we held that the court's subsequent correction of the void sentence did not violate double jeopardy.  Id.

{¶ 4}   Next, in *Woods v. Telb* (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103, we considered whether R.C. 2967.28, which authorized the parole board to impose discretionary postrelease control for Woods's theft offense, violated the separation of powers doctrine.[2]  We concluded that the parole board's statutory authority to impose postrelease control did not violate the separation of powers

---

1. R.C. 2967.28(B) states:  "Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment."

2. We use the term discretionary postrelease control to denote those periods of postrelease control authorized pursuant to R.C. 2967.28(C) for persons imprisoned for felonies of the third, fourth, or fifth degree who are not subject to the postrelease control required by R.C. 2967.28(B).

doctrine provided, however, that the trial court incorporated postrelease control into its entry at the time of sentencing. Id. at 512-513.

{¶ 5} In *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, we considered the consequences of a trial court's failure to advise an offender about postrelease control at the sentencing hearing. Id. at ¶ 1. Applying *Beasley*, we held that "[b]ecause a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing, any sentence imposed without such notification is contrary to law" and void. Id. at ¶ 23.

{¶ 6} We again confronted a sentencing court's failure to notify an offender or incorporate postrelease control into its sentencing entry in *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301; however, discovery of the sentencing error did not occur until after the offender had been released from prison, placed on postrelease control by the parole board, and subsequently reimprisoned for violating the terms of postrelease control. Id. at ¶ 5-7, 10. We granted Hernandez a writ of habeas corpus in conformity with our decisions in *Jordan* and *Woods*, holding that the parole board lacked authority to impose postrelease control because the trial court had failed to notify the offender of postrelease control or to incorporate it into the sentencing entry, and Hernandez had finished serving that sentence at the time the error was discovered. Id. at ¶ 32.

{¶ 7} Following *Hernandez*, we denied a petition for a writ of prohibition to vacate a resentencing entry imposing a mandatory period of postrelease control. *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 1. In contrast to *Hernandez*, the court discovered the sentencing error before the inmate completed serving the sentence and therefore conducted a resentencing hearing and imposed a mandatory three-year period of postrelease control. Id. at ¶ 9-11. Citing *Beasley* and *Jordan*, and distinguishing *Hernandez* on the basis that Cruzado had not yet completed his

sentence, we held that the trial court did not patently and unambiguously lack jurisdiction to correct the sentence. Id. at ¶ 19-28, 32.

{¶ 8} More recently, in *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, we concluded that an offender is entitled to a new sentencing hearing for the trial court to correct a sentence that omitted notice of postrelease control. Id. at syllabus. However, because Bezak had already completed his term of imprisonment, the court could not conduct resentencing. Id. at ¶ 18.

{¶ 9} Most recently, in *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 6, we stated: "[I]n cases in which a defendant is convicted of, or pleads guilty to, an offense for which postrelease control is required but not properly included in the sentence, the sentence is void, and the state is entitled to a new sentencing hearing to have postrelease control imposed on the defendant unless the defendant has completed his sentence."

{¶ 10} In conformity with the development of this jurisprudence, the General Assembly enacted Sub.H.B. No. 137 ("H.B. 137"), effective July 11, 2006, which amended R.C. 2967.28, 2929.14, and 2929.19 and enacted R.C. 2929.191 to provide a mechanism for correcting sentences in which the trial court failed either to notify the offender of postrelease control or to incorporate it into the sentencing entry.

{¶ 11} As amended, R.C. 2967.28(B) now provides:

{¶ 12} "Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in this division and failed to notify the offender pursuant to division (B)(3)(c) of section 2929.19 of the Revised Code regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence pursuant to division (F)(1) of section 2929.14 of the Revised Code a statement regarding post-release control."

{¶ 13} Likewise, R.C. 2929.14(F)(1) and 2929.19(B)(3)(c) and (e), as amended by H.B. 137, now provide that if a court imposed a sentence before July 11, 2006, and failed to either notify the offender of postrelease control or to include postrelease control in the judgment entry, then R.C. 2929.191 applies.

{¶ 14} R.C. 2929.191 provides:

{¶ 15} "(A)(1) If, prior to the effective date of this section, a court imposed a sentence including a prison term of a type described in division (B)(3)(c) of section 2929.19 of the Revised Code and failed to notify the offender pursuant to that division that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include a statement to that effect in the judgment of conviction entered on the journal or in the sentence pursuant to division (F)(1) of section 2929.14 of the Revised Code, at any time before the offender is released from imprisonment under that term and at a hearing conducted in accordance with division (C) of this section, the court may prepare and issue a correction to the judgment of conviction that includes in the judgment of conviction the statement that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison.

{¶ 16} " * * *

{¶ 17} "(2) If a court prepares and issues a correction to a judgment of conviction as described in division (A)(1) of this section before the offender is released from imprisonment under the prison term the court imposed prior to the effective date of this section, the court shall place upon the journal of the court an entry nunc pro tunc to record the correction to the judgment of conviction and shall provide a copy of the entry to the offender or, if the offender is not physically present at the hearing, shall send a copy of the entry to the department of rehabilitation and correction for delivery to the offender. If the court sends a copy of the entry to the department, the department promptly shall deliver a copy of the entry to the offender. The court's placement upon the journal of the entry

nunc pro tunc before the offender is released from imprisonment under the term shall be considered, and shall have the same effect, as if the court at the time of original sentencing had included the statement in the sentence and the judgment of conviction entered on the journal and had notified the offender that the offender will be so supervised regarding a sentence including a prison term of a type described in division (B)(3)(c) of section 2929.19 of the Revised Code * * *.

{¶ 18} " * * *

{¶ 19} "(C)   On and after the effective date of this section, a court that wishes to prepare and issue a correction to a judgment of conviction of a type described in division (A)(1) or (B)(1) of this section shall not issue the correction until after the court has conducted a hearing in accordance with this division. Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction.   The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible.  An appearance by video conferencing equipment pursuant to this division has the same force and effect as if the offender were physically present at the hearing.  At the hearing, the offender and the prosecuting attorney may make a statement as to whether the court should issue a correction to the judgment of conviction."

{¶ 20} We now consider the specific cases of James C. Bloomer, Jeffrey Mosmeyer, and Marcus D. Barnes.

## II.  *State v. Bloomer*

{¶ 21} James C. Bloomer appeals from a decision of the Sixth District Court of Appeals affirming the trial court's order imposing postrelease control

following a resentencing hearing. The trial court had failed to impose postrelease control in its original entry. Bloomer challenges the constitutionality of his resentencing on due process and double jeopardy grounds and the constitutionality of H.B. 137 and its enactment of R.C. 2929.191.

## A. Facts and Procedural History of Bloomer's Case

{¶ 22} On July 17, 2002, the Fulton County Grand Jury returned a six-count indictment against Bloomer, charging him with two counts of illegal manufacture of drugs, one count of assembly or possession of chemicals for the manufacture of drugs, one count of having weapons while under disability, and two counts of endangering children. In September 2002, Bloomer pleaded guilty to one count of illegal manufacture of drugs in violation of R.C. 2925.04(A), a second-degree felony, and the state dismissed the remaining counts. The court sentenced him to four years in prison. Although Bloomer signed a guilty-plea form and an acknowledgment of sentencing components that advised him of the mandatory three-year period of postrelease control, the court failed to include postrelease control in its sentencing entry.

{¶ 23} In April 2006, near the end of Bloomer's four-year term of incarceration, the state filed a motion to resentence him, pursuant to this court's decision in *Hernandez*, seeking to have the court impose the three-year period of mandatory postrelease control required by R.C. 2967.28(B)(2). The court granted the motion and on May 23, 2006, conducted that resentencing hearing. At that hearing, Bloomer addressed the court and asked it to deny the prosecutor's motion, asserting that he had done everything in his power to reform himself while in prison. However, stating that it had "no leeway" and that it intended to "modify" or "correct" its prior sentence, the court reimposed Bloomer's four-year prison term, added a three-year period of mandatory postrelease control, and notified Bloomer that a violation of the conditions of that control could result in the imposition of a prison term of up to one-half of the stated prison term.

Additionally, in response to the prosecutor's inquiry regarding the imposition of fines and costs, the court stated: "Previous sentence in all respects are [sic] otherwise ratified."

{¶ 24} The court then issued a comprehensive resentencing entry that reimposed the four-year prison term, the $1,500 fine, the three-year driver's license suspension, and the order of forfeiture and destruction of all items seized by the Multi-Area Narcotics Task Force. That entry also included the court's notice that Bloomer would be subject to three years of mandatory postrelease control and that a violation of the conditions of that control could result in the imposition of a prison term of up to one-half of the stated prison term.

{¶ 25} Bloomer appealed to the Sixth District Court of Appeals, challenging his resentencing on due process, double jeopardy, and ex post facto grounds. *State v. Bloomer*, Fulton App. No. F-06-012, 2007-Ohio-1039, ¶ 3. In accordance with our decision in *Beasley*, the appellate court affirmed Bloomer's resentencing, holding that the correction of a "statutorily incorrect sentence" does not violate an offender's right to be free from double jeopardy. Id. at ¶ 9. The appellate court stated that the trial court had followed the procedure set forth in R.C. 2929.191 for correcting a sentence imposed before July 11, 2006, the effective date of H.B. 137. Id. We accepted jurisdiction to review Bloomer's resentencing. 114 Ohio St.3d 1506, 2007-Ohio-4285, 872 N.E.2d 949.

*B. Due Process, Double Jeopardy, and Finality*

{¶ 26} Bloomer first contends that in the absence of a direct appeal by the state, his resentencing violates the guarantees of the Due Process and Double Jeopardy Clauses of the United States Constitution by increasing his punishment and interfering with his legitimate expectation of finality in his original and nearly completed sentence. These arguments are not well taken.

{¶ 27} In accordance with our decision in *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, a sentence is void if the court fails to follow

8

the statutory mandates to impose postrelease control. As we have explained, " 'The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment.' (Citations omitted.)" *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, at ¶ 12, quoting *Romito v. Maxwell* (1967), 10 Ohio St.2d 266, 267-268, 39 O.O.2d 414, 227 N.E.2d 223; see also *Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, at ¶ 19. Because jeopardy does not attach to a void sentence, the subsequent imposition of the statutorily required sentence cannot constitute double jeopardy. *Jordan* at ¶ 25.

{¶ 28} Furthermore, "there can be no reasonable, legitimate expectation of finality in [a void sentence]." *Simpkins* at ¶ 36, citing *United States v. Crawford* (C.A.5, 1985), 769 F.2d 253, 257-258. As in *Simpkins*, Bloomer had served the majority of his prison term at the time of resentencing, but he had not completed it. Since his original sentence lacked a statutorily mandated term, it failed to comply with law, and therefore Bloomer had no legitimate expectation in its finality. Accordingly, the resentencing does not offend the Double Jeopardy or Due Process Clauses. *Simpkins* at ¶ 37.

*C. Standing to Challenge the Constitutionality of H.B. 137*

{¶ 29} Bloomer also challenges the constitutionality of H.B. 137. Specifically, he contends that R.C. 2929.191 violates the Double Jeopardy Clause of the United States Constitution and that H.B. 137 violates the single subject rule and the separation of powers doctrine. The state, on the other hand, contends that because Bloomer's original sentencing hearing and his resentencing occurred before the effective date of the act, he has no standing to challenge its constitutionality because it has no effect on him.

{¶ 30} Before a court may decide the merits of a case, the party seeking relief must have standing to do so. "A person has no standing to attack the

constitutionality of an ordinance unless he has a direct interest in the ordinance of such a nature that his rights will be adversely affected by its enforcement." *Anderson v. Brown* (1968), 13 Ohio St.2d 53, 42 O.O.2d 100, 233 N.E.2d 584, paragraph one of the syllabus. The doctrine of standing applies to both civil and criminal matters and generally requires a person challenging the constitutionality of a statute to demonstrate that the statute infringes upon his legally protected right. See, e.g., *State v. Burgun* (1978), 56 Ohio St.2d 354, 365, 10 O.O.3d 485, 384 N.E.2d 255 ("a person who is seeking to raise the issue of the validity of a discriminatory enactment has no standing for that purpose unless he belongs to the class which is prejudiced by the statute"). Thus, we must determine whether H.B. 137 applies to Bloomer such that he has standing to challenge its constitutionality.

{¶ 31} H.B. 137 became effective July 11, 2006. Bloomer acknowledges that his sentencing and his resentencing occurred *before* that date. Thus, Bloomer was not resentenced pursuant to R.C. 2929.191, as enacted by H.B. 137, and Bloomer has no standing to challenge the constitutionality of the act.

{¶ 32} Bloomer now argues that the trial court failed to conduct a de novo resentencing hearing as mandated by *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961. Although the trial court stated that it was modifying or correcting its prior sentence, it did not merely add postrelease control to its original sentence as Bloomer now claims. Instead, the trial court proceeded to conduct a full resentencing hearing, at which it afforded Bloomer his right of allocution, reimposed his original prison term, and advised him of the applicable three-year period of mandatory postrelease control as well as the penalty for violating that postrelease control. In light of the foregoing, these propositions of law are not well taken, and we affirm the judgment of the appellate court with respect to the resentencing in Bloomer's case.

### III. *State v. Mosmeyer*

10

**{¶ 33}** Jeffrey Mosmeyer appeals from a decision of the First District Court of Appeals affirming the trial court's resentencing order, which imposed a term of mandatory postrelease control that had been omitted from Mosmeyer's original sentence. In addition to challenging the constitutionality of his resentencing on due process and double jeopardy grounds, Mosmeyer also contends that R.C. 2929.191 and H.B. 137 violate the separation of powers doctrine and the one subject rule.

### A. Facts and Procedural History of Mosmeyer's Case

**{¶ 34}** In 1999, Mosmeyer pleaded guilty to one count of aggravated robbery, a first-degree felony, and two counts of robbery, second-degree felonies. Mosmeyer signed a plea form that notified him that he may be subject to a five-year period of postrelease control for his first-degree felony or up to a three-year period for his other offenses. At his sentencing hearing, the trial court imposed a prison term of eight years for aggravated robbery, concurrent with six-year concurrent terms for each robbery. The court also informed Mosmeyer that upon his release from prison, he would serve concurrent terms of five years' postrelease control for the aggravated robbery and three years for the robbery convictions. Additionally, the court explained that if he violated the terms of his postrelease control, the parole board could extend his period of postrelease control, make it more restrictive, or return him to prison for up to one-half of his original sentence. However, the court neglected to include the postrelease control language in its sentencing entry.

**{¶ 35}** On July 7, 2006, the trial court, sua sponte, journalized an entry scheduling a resentencing hearing pursuant to our decision in *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, based upon its failure to include language about the mandatory period of postrelease control in its sentencing entry in Mosmeyer's case.

**{¶ 36}** At the August 23, 2006 resentencing hearing, Mosmeyer objected, arguing that pursuant to *Hernandez*, he was not subject to resentencing for purposes of imposing postrelease control. Rejecting that argument, the court notified Mosmeyer that he would serve a five-year period of mandatory postrelease control upon his release from prison and explained the consequences for violating postrelease control. The court then reimposed Mosmeyer's original prison terms. Following the hearing, the court incorporated its oral pronouncement into a nunc pro tunc judgment entry.

**{¶ 37}** On appeal, the First District Court of Appeals held that pursuant to *Cruzado,* the trial court had jurisdiction to correct Mosmeyer's void sentence, and that the correction did not extend his term of imprisonment or postrelease control beyond that contemplated at his original sentencing hearing. See *State v. Mosmeyer* (June 20, 2007), Hamilton App. No. C-060747. Applying *Cruzado*, the court decided it did not need to address Mosmeyer's constitutional challenges to H.B. 137. Id. We accepted Mosmeyer's discretionary appeal challenging the trial court's authority to resentence him as well as the constitutionality of H.B. 137 and R.C. 2929.191. 115 Ohio St.3d 1472, 2007-Ohio-5735, 875 N.E.2d 626.

*B. Due Process, Double Jeopardy, and Finality*

**{¶ 38}** Mosmeyer contends that in the absence of a timely direct appeal by the state, a trial court lacks jurisdiction to conduct a resentencing to add an omitted term of postrelease control. He also asserts that his resentencing violates the Due Process Clause of the United States Constitution because it interferes with his legitimate expectation of finality in his nearly completed prison sentence. Mosmeyer does not present these challenges in the context of R.C. 2929.191. For the reasons stated in our analysis in *Bloomer*, these claims are overruled.

*C. Separation of Powers*

**{¶ 39}** Mosmeyer next contends that R.C. 2929.191 is unconstitutional because it violates the separation of powers doctrine in two respects. First, he

argues that Section 5(B), Article IV of the Ohio Constitution grants this court the authority to prescribe rules governing practice and procedure in all state courts and that the legislature has usurped this power by regulating court procedure.[3] Second, he maintains that the procedure set forth in R.C. 2929.191 unconstitutionally permits a trial court to conduct appellate review of its own judgment.

{¶ 40} Denying that the legislature usurped judicial authority by enacting R.C. 2929.191, the state contends that it codifies a procedure established by this court in *Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, to impose an omitted term of postrelease control to a criminal sentence. In reviewing this contention, we recognize that R.C. 2929.191 became effective in 2006 and that this court announced its decision in *Simpkins* in 2008. Thus the statute did not codify any procedure established by this court. We also recognize, however, that although we announced our decision in 2008, the facts in *Simpkins* arose before the effective date of the statute, and hence R.C. 2929.191 had no application to *Simpkins*.

{¶ 41} Statutes enjoy a strong presumption of constitutionality. *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 6, citing *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12; *State v. Williams* (2000), 88 Ohio St.3d 513, 521, 728 N.E.2d 342.

---

3. Mosmeyer also argues that to the extent R.C. 2967.28 purports to authorize the parole board to impose postrelease control even in the absence of a judicially imposed postrelease control sentence, the statute infringes upon the court's authority to sentence offenders, violating the separation-of-powers doctrine and our holding in *Woods v. Telb* (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103. However, as the state notes in its brief, the proposition of law accepted by this court deals only with the constitutionality of R.C. 2929.191 in relation to the separation-of-powers doctrine. Therefore, the argument attacking the constitutionality of R.C. 2967.28 is not properly before the court.

**{¶ 42}** Section 5(B), Article IV of the Ohio Constitution vests this court with the power to "prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right" and further provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Here, however, Mosmeyer has failed to identify any existing rule of criminal procedure that conflicts with R.C. 2929.191.

**{¶ 43}** Mosmeyer also contends that the procedure set forth in R.C. 2929.191 unconstitutionally permits a trial court to conduct appellate review of its own judgment. He relies on our decision in *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 28 OBR 250, 503 N.E.2d 136, for the proposition that the General Assembly cannot confer authority upon a common pleas court to review its own judgment. However, *Jemison* is inapposite.

**{¶ 44}** In *Jemison*, we considered the constitutionality of former R.C. 4509.101, effective January 1, 1984, 139 Ohio Laws, Part I, 679-686, which governs the financial responsibility of persons operating motor vehicles, and held that the statute violated the separation of powers doctrine because it conferred authority upon the registrar of motor vehicles to review a prior court order. *Jemison,* 28 Ohio St.3d at 159, 162, 28 OBR 250, 503 N.E.2d 136.

**{¶ 45}** *Jemison* is distinguishable from the present case because nothing in R.C. 2929.191 purports to confer the power of appellate review on an administrative agency. Instead, this statute provides a mechanism for a trial court to correct its own judgment entry when it fails to notify the offender about or to impose postrelease control. R.C. 2929.191(A)(1). Accordingly, Mosmeyer has not demonstrated beyond a reasonable doubt that R.C. 2929.191 violates the separation of powers doctrine.

*D. One Subject Rule*

**{¶ 46}** Mosmeyer further contends that H.B. 137 violates the one subject rule because it combines two unrelated topics – the sealing of juvenile court records and postrelease control. The state urges us to uphold the act against this challenge, contending that both provisions address criminal justice matters.

**{¶ 47}** Section 15(D), Article II of the Ohio Constitution provides: "No bill shall contain more than one subject, which shall be clearly expressed in its title." The primary and universally recognized purpose of the one-subject rule is to prevent logrolling – " 'the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.' " *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 142-143, 11 OBR 436, 464 N.E.2d 153, quoting 1A Sutherland, Statutes and Statutory Construction (4th Ed.1972), Section 17.01.

**{¶ 48}** We have stated: "Our role in the enforcement of the one-subject provision is limited. To avoid interfering with the legislative process, we must afford the General Assembly 'great latitude in enacting comprehensive legislation by not construing the one-subject provision so as to unnecessarily restrict the scope and operation of laws, or to multiply their number excessively, or to prevent legislation from embracing in one act all matters properly connected with one general subject.' " *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27, quoting *Dix*, 11 Ohio St.3d at 145, 11 OBR 436, 464 N.E.2d 153. We have further emphasized that "every presumption in favor of the enactment's validity should be indulged." *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 6, 19 OBR 1, 482 N.E.2d 575.

**{¶ 49}** In recognition of this deference to the legislature, we have held: "A manifestly gross and fraudulent violation of the one-subject provision

contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the syllabus. We have further acknowledged that as long as a common purpose or relationship exists between topics, the mere fact that a bill embraces more than one topic will not be fatal. *Ohio Civ. Serv. Emps. Assn.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, at ¶ 28, citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 496, 715 N.E.2d 1062, and *Hoover*, 19 Ohio St.3d at 6, 19 OBR 1, 482 N.E.2d 575. And we have emphasized that it is the disunity of subject matter, rather than the aggregation of topics, that causes a bill to violate the one-subject rule. *Nowak* at ¶ 59; *Sheward,* 86 Ohio St.3d at 496, 715 N.E.2d 1062; *Hoover* at 6, 19 OBR 1, 482 N.E.2d 575; and *Dix,* 11 Ohio St.3d at 146, 11 OBR 436, 464 N.E.2d 153.

{¶ 50} Applying this deferential test, we have upheld the constitutionality of a bill that amended both Ohio's financial responsibility law and laws governing uninsured- and underinsured-motorist coverage, noting that the topics were "part of a legislative scheme to reduce the dangers posed by uninsured and underinsured motorists." *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 61-62, 676 N.E.2d 506.

{¶ 51} We have also upheld a resolution proposing an amendment to the Ohio Constitution authorizing the issuance of general obligation bonds to create and preserve jobs, enhance employment and educational opportunities, and promote economic growth through (1) the funding of public infrastructure capital improvements, (2) research and development, and (3) the development of certain business sites and facilities. *State ex rel Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 2, 5. Recognizing that the General Assembly's combination of the three programs into one amendment was "seemingly the product of a tactical decision," we stated that it was "not so incongruous that it

could not, by any reasonable interpretation, be considered germane to the purposes of statewide job creation and economic development." *Willke* at ¶ 38.

{¶ 52} In contrast, finding no common purpose or relationship, we have invalidated a tort reform bill that attempted "to combine the wearing of seat belts with employment discrimination claims, class actions arising from the sale of securities with limitations on agency liability in actions against a hospital, recall notification with qualified immunity for athletic coaches, [and] actions by a roller skater with supporting affidavits in a medical claim." *Sheward*, 86 Ohio St.3d at 497-498, 715 N.E.2d 1062. We have also invalidated a statutory provision that excluded certain employees from a collective-bargaining process when the provision was enacted as part of an appropriations bill encompassing a wide range of budgetary concerns. *Ohio Civ. Serv. Emps. Assn.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 32-36. Similarly, we have held that a statute allowing the recording of a defectively executed mortgage to serve as constructive notice of the mortgage violated the one-subject rule when it appeared "cryptically between provisions covering aviation and construction certificates for major utility facilities on one side and regulations for the Department of Transportation on the other," which were then surrounded by provisions ranging from liquor control to food-stamp trafficking. *Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, at ¶ 59.

{¶ 53} Here, while H.B. 137 addresses two distinct topics – postrelease control and the sealing of juvenile delinquency records, those topics share a common relationship because they concern the rehabilitation and reintegration of offenders into society.

{¶ 54} Although this court has previously characterized juvenile delinquency proceedings as civil in nature, *Cope v. Campbell* (1964), 175 Ohio St. 475, 26 O.O.2d 88, 196 N.E.2d 457, paragraph one of the syllabus, we have long recognized that such proceedings also possess inherently criminal aspects.

*In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 76; *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26 ("numerous constitutional safeguards [including various Fifth and Sixth Amendment protections, the requirement of proof beyond a reasonable doubt, double jeopardy, and ex post facto principles] normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings"). We have expressly acknowledged that juvenile delinquency proceedings, like criminal proceedings, involve the enforcement of criminal laws. *In re C.S.* at ¶ 76, citing *Walls* at ¶ 26. Moreover, we note that the procedure for sealing juvenile records set forth in H.B. 137 is comparable to that in the adult criminal justice system. Compare R.C. 2151.356 and 2953.32. One of the overriding purposes of our juvenile justice system is the rehabilitation of offenders. R.C. 2151.01; see also *In re Caldwell* (1996), 76 Ohio St.3d 156, 157-158, 666 N.E.2d 1367. "Since its origin, the juvenile justice system has emphasized individual assessment, the best interest of the child, treatment, and rehabilitation, with a goal of reintegrating juveniles back into society." *State v. Hanning* (2000), 89 Ohio St.3d 86, 88, 728 N.E.2d 1059. The provisions of H.B. 137 regarding the sealing of juvenile delinquency records promote these goals of rehabilitation and reintegration into society by permitting rehabilitated offenders to apply to have their records sealed so that they can leave their youthful offenses in the past. R.C. 2151.356 and 2151.357; see also *In re T.R.* (1990), 52 Ohio St.3d 6, 16, 556 N.E.2d 439.

{¶ 55} Although R.C. 2929.11(A) states that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender," the statute further provides that "[t]o achieve those purposes, the sentencing court shall consider the need for * * * rehabilitating the offender." As we observed in *Jordan*, "postrelease control furthers the goal of successfully reintegrating offenders into society after their release from prison." *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d

18

864, at ¶ 21, citing *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, at ¶ 16. See also *Woods*, 89 Ohio St.3d at 512, 733 N.E.2d 1103 ("post-release control sanctions are sanctions aimed at behavior modification in the attempt to reintegrate the offender safely into the community"). Thus, postrelease control and the sealing of juvenile records share a common relationship because both concern the rehabilitation of persons who have violated Ohio's criminal laws and their reintegration into society.

{¶ 56} Because postrelease control and the sealing of juvenile delinquency records share this common relationship, the legislature's combination of these related topics into a single bill does not constitute a manifestly gross or fraudulent violation of the one-subject rule. Accordingly, we hold that H.B. 137 does not violate Section 15(D), Article II of the Ohio Constitution and affirm the judgment of the appellate court with respect to the resentencing in Mosmeyer's case.

## IV. *State v. Barnes*

### A. *Facts and Procedural History of Barnes's Case*

{¶ 57} Marcus D. Barnes appeals from a decision of the Eleventh District Court of Appeals affirming the trial court's judgment, which corrected his sentence, pursuant to R.C. 2929.191, and imposed a mandatory term of postrelease control. Convicted of involuntary manslaughter and felonious assault as lesser included offenses of the indicted offenses of murder and attempted murder, Barnes initially received consecutive prison terms of nine and six years respectively for those offenses. On direct appeal, however, the appellate court reversed these convictions. *State v. Barnes* (July 21, 2000), Portage App. No. 98-P-0052. We accepted jurisdiction of the state's appeal and held that a defendant asserting self-defense may not introduce evidence of specific acts of the victim to demonstrate that the victim was the initial aggressor, and that the trial court's erroneous lesser included offense instruction on felonious assault did not rise to

the level of plain error that supported a reversal of the conviction.  *State v. Barnes* (2002), 94 Ohio St.3d 21, 25, 28, 759 N.E.2d 1240.  We remanded the cause for further proceedings consistent with our opinion.  Id. at 29.

{¶ 58} On remand, the trial court conducted a resentencing hearing to make the findings required to support its imposition of greater-than-minimum and consecutive sentences.  After making the requisite findings, the court reimposed Barnes's nine-year prison term for involuntary manslaughter and six-year prison term for felonious assault but ordered him to serve the sentences concurrently.  However, at the resentencing hearing, the court failed to mention postrelease control or include it in its entry.

{¶ 59} Barnes then appealed to the Eleventh District Court of Appeals a second time.  The appellate court affirmed his convictions and sentence, *State v. Barnes*, Portage App. No. 2002-P-0079, 2003-Ohio-6674, and we declined to accept jurisdiction over his appeal.  *State v. Barnes*, 102 Ohio St.3d 1412, 2004-Ohio-1763, 806 N.E.2d 563.

{¶ 60} The trial court sua sponte issued an order for the sheriff to transport Barnes to court for a resentencing hearing.  On August 15, 2006, the court convened a resentencing hearing pursuant to this court's decision in *Hernandez.*  At the hearing, the prosecutor noted that R.C. 2929.191 authorized the court to return an offender to court to be advised of postrelease control, to advise the offender of postrelease control, and to issue a nunc pro tunc journal entry incorporating postrelease control.

{¶ 61} At the hearing, Barnes objected to the issuance of a nunc pro tunc order on the ground that such an order may reflect only what actually occurred at the first hearing but was not journalized.  The court informed Barnes that upon his release from prison, he would be "subject to Post Release Control pursuant to Ohio Revised Code 2967.28" and that if he violated the terms of that control, he

20

could "receive an additional prison term not to exceed fifty percent of [his] original prison term."

**{¶ 62}** On August 17, 2006, and again on September 1, 2006, the court issued nunc pro tunc sentencing orders stating that it had "notified the Defendant that after release from prison, the Defendant *may* be supervised under post release control R.C. 2967.28," and that "if the Defendant violates the terms of the post-release control, the Defendant could receive an additional prison term not to exceed 50 percent of his original prison term." (Emphasis added.) The second entry reimposed concurrent terms of nine years for involuntary manslaughter and six years for felonious assault.

**{¶ 63}** Barnes appealed his resentencing entry for the third time to the Eleventh District Court of Appeals, challenging the use of a nunc pro tunc entry to amend his sentence and the constitutionality of his resentencing and of R.C. 2929.191, as well as the statute's application to his case, claiming violations of the separation of powers doctrine, the prohibition against ex post facto legislation, double jeopardy, res judicata, and his right of allocution. The appellate court rejected each of these assignments of error and affirmed the resentencing in all respects.

**{¶ 64}** We accepted jurisdiction over Barnes's discretionary appeal to review his contentions that (1) imposing postrelease control after an offender has commenced serving a sentence constitutes double jeopardy, violates rights to due process, and is barred by res judicata, (2) a sentence imposing postrelease control deprives an offender of due process when he is neither afforded his right of allocution nor properly informed of the conditions of postrelease control, (3) the application of R.C. 2929.191 to a sentence originally imposed in 1997 violates the constitutional prohibition against ex post facto and retroactive legislation, (4) a court's entry of a nunc pro tunc order to supply an omission rather than a correction of a previous action by the court violates due process, and (5) when a

court conducts a hearing to impose an omitted period of postrelease control, it must conduct a full resentencing hearing.[4]

### B. *Due Process, Double Jeopardy, and Finality*

**{¶ 65}** We first address Barnes's contention that in the absence of a direct appeal by the state, the trial court could not constitutionally resentence him. As did Bloomer and Mosmeyer, Barnes argues that his resentencing violates the Due Process and Double Jeopardy Clauses of the United States Constitution because it increased his punishment after he began serving his sentence and interfered with his legitimate expectation of finality in his original, unappealed sentence. Barnes did not raise these arguments in the context of R.C. 2929.191. For the reasons stated in our analysis of *Bloomer*, these arguments are without merit and are overruled.

### C. *Failure to Comply with R.C. 2929.191 and Supreme Court Precedent*

**{¶ 66}** The essence of Barnes's remaining propositions of law is that our precedent required the trial court to conduct a full resentencing hearing to impose an omitted term of mandatory postrelease control, and that to the extent that R.C. 2929.191 requires less than a full resentencing hearing, it is unconstitutional.

**{¶ 67}** The state urges us to affirm Barnes's resentencing because he has failed to satisfy his burden of proving beyond a reasonable doubt that R.C. 2929.191 is unconstitutional. Moreover, the state contends that the trial court fully complied with the directives of the statute by informing Barnes of the applicability of postrelease control and by incorporating it into its nunc pro tunc sentencing entry. However, because Barnes is entitled to relief on other grounds, it is not necessary for us to reach these constitutional issues. See *Massachusetts v. Westcott* (1977), 431 U.S. 322, 323, 97 S.Ct. 1755, 52 L.Ed.2d 349 (recognizing that courts should decide constitutional questions only when necessary); *State ex*

---

4. Barnes also argues that H.B. 137 violates the one-subject rule. Having resolved that issue in the context of Mosmeyer's appeal, we do not address it here.

*rel. Crabtree v. Ohio Bur. of Workers' Comp.* (1994), 71 Ohio St.3d 504, 507, 644 N.E.2d 361.

{¶ 68} Despite any differences between R.C. 2929.191 and our holdings in *Jordan*, *Hernandez*, and *Cruzado*, at their core, each fundamentally requires a court imposing mandatory postrelease control to include in the sentencing entry a statement that an offender convicted of a first- or second-degree felony offense *will* be subject to postrelease control after leaving prison. R.C. 2929.191(A)(1) ("the court may prepare and issue a correction to the judgment of conviction that includes in the judgment of conviction the statement that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison"); *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 17 ("a trial court is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence" [footnote omitted]); *Hernandez,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, at ¶ 16 ("The trial court * * * committed error because it did not notify him at his sentencing hearing that he would be subject to mandatory postrelease control and did not incorporate postrelease control into its sentencing entry"); *Cruzado*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, at ¶ 28 (the court "was authorized to correct the invalid sentence to include the appropriate, mandatory postrelease-control term"). See also R.C. 2929.14(F)(1) ("If a court imposes a prison term for a felony of the first degree, [or] for a felony of the second degree * * * it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment * * *").

{¶ 69} Here, although mandatory postrelease control terms of five and three years applied, the trial court advised Barnes at the sentencing hearing, "[Y]ou *will* now be subject to Post Release Control pursuant to Ohio Revised Code 2967.28. If you violate the terms of your Post Release Control you could

receive an additional prison term not to exceed fifty percent of your original prison term * * *." (Emphasis added.)  However, the trial court failed to state the length of the postrelease control term.  Additionally, in its nunc pro tunc entry, the court erroneously stated that Barnes "*may* be supervised under post release control R.C. 2967.28."  (Emphasis added.)  The trial court also stated that "if the Defendant violates the terms of the post-release control, the Defendant could receive an additional prison term not to exceed 50 percent of his original prison term," but again failed to state the length of the postrelease control term.  Thus, the court failed to satisfy the most basic requirement of R.C. 2929.191 and our existing precedent – that it notify the offender of the mandatory nature of the term of postrelease control and the length of that mandatory term and incorporate that notification into its entry.

{¶ 70} Moreover, Barnes completed his prison term on January 5, 2007, and has now been released.  As we stated in *Bezak* and *Simpkins*, once an offender has completed the prison term imposed in his original sentence, he cannot be subjected to another sentencing to correct the trial court's flawed imposition of postrelease control.  *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 18; *Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, at syllabus.

{¶ 71} Furthermore, in the absence of a proper sentencing entry imposing postrelease control, the parole board's imposition of postrelease control cannot be enforced.  Imposition of punishment is a function of the judicial branch of government.  *Ex parte United States* (1916), 242 U.S. 27, 41-42, 37 S.Ct. 72, 61 L.Ed. 129 ("Indisputably under our constitutional system the right to try offenses against the criminal laws, and, upon conviction, to impose the punishment provided by law, is judicial * * *").  See also *Woods*, 89 Ohio St.3d 504, 733 N.E.2d 1103.  In *Woods,* we held that because postrelease control is part of the original judicially imposed sentence, the parole board's discretionary ability to

24

impose postrelease control sanctions does not impede the function of the judicial branch and does not violate the separation of powers doctrine. Id. at 512. This is so because the sentencing court made the decision to impose the penalty of postrelease control and the executive officers carried out that judgment.

{¶ 72} However, the legislature has now amended R.C. 2929.14(F)(1) to provide: "If a court imposes a sentence including a prison term of a type described in this division on or after July 11, 2006, the failure of a court to include a post-release control requirement in the sentence pursuant to this division does not negate, limit, or otherwise affect the mandatory period of post-release control that is required for the offender under division (B) of section 2967.28 of the Revised Code." Nothing in that division, however, provides that the executive branch may impose postrelease control if the sentencing court has not ordered it, nor does its language conflict with our precedent. However, a sentencing court must impose postrelease control before an offender completes the stated term of imprisonment. See *Woods*, 89 Ohio St.3d at 512, 733 N.E.2d 1103; *Hernandez*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, at ¶ 32; *Cruzado*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, at ¶ 28; *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, at ¶ 16-18. We therefore reverse the decision of the court of appeals and discharge Barnes.

## V. Conclusion

{¶ 73} Based upon the foregoing, the judgments of the courts of appeal in *Bloomer* and *Mosmeyer* are affirmed. The judgment of the court of appeals in *Barnes* is reversed, Barnes is discharged, and the trial court is instructed to note on the record that because Barnes has completed his prison sentence, he will not be subject to resentencing pursuant to law.

Judgment accordingly.

MOYER, C.J., and PFEIFER, O'CONNOR, and CUPP, JJ., concur.

LUNDBERG STRATTON and LANZINGER, JJ., concur in part and dissent in part.

_____

**LANZINGER, J., concurring in part and dissenting in part.**

**{¶ 74}** I have maintained my position, most recently stated in *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, that errors made during a plea hearing or at sentencing should be corrected on direct appeal. *Boswell* at ¶ 17. Failure to notify a defendant of postrelease control or to include it within a sentencing entry should render a sentence voidable, meaning subject to correction. Before enactment of Sub.H.B. No. 137 ("H.B. 137"), effective July 11, 2006, a trial court had no special statutory power to correct a sentence that contained a postrelease control error. Now, however, R.C. 2929.191 allows a trial court to correct a sentencing error related to the imposition of mandatory postrelease control, provided that the correction is made after the offender is given a hearing and while the offender is still serving a prison term.

**{¶ 75}** I agree that H.B. 137 does not violate Section 15(D), Article II of the Ohio Constitution and that it has not been demonstrated beyond a reasonable doubt that R.C. 2929.191 violates the separation-of-powers doctrine. With respect to Bloomer, who was sentenced before the statute's effective date, I dissent from the judgment and would hold that Bloomer's original sentence must stand because the state did not appeal the sentence containing the postrelease control error. With respect to Mosmeyer, I concur in the judgment because the trial court correctly followed the statutory procedure to impose postrelease control at his August 23, 2006 resentencing. With respect to Barnes, although I do not agree with the majority's reasoning, I also concur in the judgment, because Barnes has already served his prison term.

**{¶ 76}** The facts of Barnes's case illustrate one of the difficulties that arise when the majority determines a sentence of this type to be void, meaning imposed

by a court without jurisdiction. It is impossible for me to see how Barnes could be released if indeed the sentence already served were void and a nullity—a full resentencing first would be required to impose a valid penalty. Apparently what the majority holds is that a sentence is void only until it is served completely, when it then has full effect. This does not seem to be logical.

{¶ 77} I respectfully concur in the judgments as to *Mosmeyer* and *Barnes* and dissent with respect to the judgment in *Bloomer*.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Roger D. Nagel, Fulton County Prosecuting Attorney, and Paul H. Kennedy, Assistant Prosecuting Attorney, for appellee in case No. 2007-0693.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee in case No. 2007-1415.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellee in case No. 2007-1439.

Timothy Young, State Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant in case No. 2007-0693.

Derek W. Gustafson, for appellant in case No. 2007-1415.

Paul Mancino Jr., for appellant in case No. 2007-1439.

_____