[Cite as *State v. Ullman*, 2022-Ohio-4683.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

SETH ULLMAN

    Appellant

C.A. No.    21AP0055

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2021 CRB 000112

DECISION AND JOURNAL ENTRY

Dated: December 27, 2022

CARR, Judge.

**{¶1}** Defendant-Appellant Seth Ullman appeals the judgment of the Wayne County Municipal Court. This Court affirms.

I.

**{¶2}** On January 20, 2021, Ullman assaulted D.R., his longtime girlfriend whom he had been living with for a few years. The two also have a child together. Following the incident, a complaint was filed alleging Ullman committed domestic violence in violation of R.C. 2919.25(A). The matter proceeded to a bench trial at which D.R. was called as a court's witness. The trial court found Ullman guilty, and he was thereafter sentenced.

**{¶3}** Ullman has appealed, raising four assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

ULLMAN'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE
AS A MATTER OF LAW THE COURT. (SIC)

{¶4}  Ullman argues in his first assignment of error that his conviction was based upon insufficient evidence.  Specifically, he contends that he did not act knowingly due to seizures that he experienced.

{¶5}  When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶6}  R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶7}  Around 9:30 a.m. on January 20, 2021, Sergeant Mike Mascolo and Officer Scott Ries of the Rittman Police Department were dispatched to D.R. and Ullman's residence.  Police found D.R. standing in front of a neighbor's house holding a baby.  D.R. was standing in the snow without shoes on.  D.R. told police that Ullman had tried to gouge her eye out.  She asked police to check the house.  D.R. also informed police that her car was missing, and Ullman had hidden it.

D.R. complained a little about her lip and soreness in her eye area. Police observed that her left eye was red. Photos of D.R. were admitted into evidence. D.R. informed police that she wanted Ullman to get medical help for his seizure issues.

{¶8} As to the incident itself, D.R. told police that Ullman had a seizure earlier and that they had been arguing since 9:00 a.m. D.R. stated that, when Ullman had the seizure, she prevented him from falling into an organ in the living room. D.R. indicated that Ullman became violent when he came out of seizures. The arguing escalated and Ullman tried to trip D.R. as she was putting her shoes on in order to leave.

{¶9} Sergeant Mascolo testified to the following chain of events:

> [D.R.] said she was sitting in the kitchen, holding the baby and he tried to choke, he was choking her. She indicated that when she was holding the baby that he pushed her while she was holding the baby and the baby's head bumped into the mirror. She did indicate that the baby was not injured in that capacity. She indicated that when she had actually taken a shower and she went to get dressed she put a crib in front of the bedroom door to prevent him from coming into the bedroom. She contacted her sister because she was going to leave the residence and get out of there. He didn't want her leaving with the child. The[n], it escalated to the point when she turned around and said I'm calling the police. At that point, that's when he started grabbing her face, gouged her eyes and attempted to gouge her eye out as she claimed. The fight was on and she ended up biting his finger causing his finger to bleed all over the kitchen and all over the house and the walls, etcetera.

{¶10} Officer Ries located Ullman in the shower. When Ullman was asked about the blood, Ullman stated that D.R. had bit him during an argument. Officer Ries asked Ullman about the location of D.R.'s car. Ullman initially told Officer Ries that Ullman had no idea where the car was but then finally stated that it would be within walking distance and could be located on the next street over. When pressed further about the vehicle, Ullman started shaking and fell to the ground. It appeared he was having a seizure. Ullman appeared normal afterwards.

{¶11} Officer Ries then asked Ullman where his clothes were. Ullman indicated they were in the basement. Ullman went into the basement, but after waiting a while, Officer Ries went downstairs to see what was taking so long. Ullman was still walking around naked. Officer Ries told Ullman he needed to put on some clothes. Eventually some were located. Ullman put on a pair of sweatpants, which unbeknownst to Officer Ries, had a knife in the pocket. Ullman then pulled out the knife and stabbed himself in the arm. At that point, police called EMS to transport Ullman to the hospital.

{¶12} Additionally, portions of Sergeant Mascolo's body camera video were played for the trial court; however, the video was not admitted into evidence and is not part of the record on appeal.

{¶13} D.R. testified that Ullman is the love of her life and that, at the time of trial, she had lived with him for the last three years. The two also have a child together. D.R. admitted to calling the police on January 20, 2021. However, she claimed that she called the police hoping that the police would take Ullman to the hospital to get him help for all the problems associated with his seizures. D.R. averred that she called the police during a seizure. D.R. indicated that Ullman blacks out during his seizures and it sometimes takes him a week to remember what happened. D.R. did not believe that Ullman was knowingly trying to injure her. She asserted that Ullman was not to blame, his seizures were. Nonetheless, D.R. also agreed that she told police that Ullman was attempting to block her from leaving the house and attempted to gouge her eye out. She did not remember telling police that she had redness on her face and claimed that the photo taken by the police just showed her rosacea. D.R. testified that she did not remember telling officers that Ullman had choked her or tried to trip her.

{¶14} Ullman testified in his defense. Ullman claimed that he did not really remember anything about the day until the police arrived. Ullman did not remember D.R. biting his finger and asserted that he did not at first realize it was his finger that was bleeding. Ullman maintained that he had more than one seizure that day. Ullman remembered arguing with police about getting arrested. Ullman told the police that they were not going to arrest him and stabbed himself so that he would not be taken to jail.

{¶15} Viewing the evidence presented in a light most favorable to the prosecution, we conclude that sufficient evidence was presented to establish that Ullman acted knowingly. There was evidence that D.R. and Ullman were arguing. There was also evidence that Ullman attempted to gouge D.R.'s eye out after she informed him that she was calling the police. Thus, there was evidence presented that Ullman's actions were not just disordered movements by a person having a seizure. The facts and circumstances presented to the trial court support that Ullman intended to harm D.R.

{¶16} Ullman has not demonstrated his conviction is based upon insufficient evidence. Ullman's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE STATE OF OHIO['S] MOTION FOR THE COURT TO CALL ALLEGED VICTIM WITNESS AS ITS OWN WITNESS, PURSUANT TO EVID.R. 614(A).

{¶17} Ullman argues in his second assignment of error that the trial court erred in calling D.R. as the court's witness.

{¶18} A review of the record reveals that Ullman did not object to the State's request to call D.R. as the court's witness. Further, Ullman has not argued plain error on appeal. "A defendant forfeits appellate review of an alleged error at trial if [he] fails to contemporaneously

object to that error at trial. An objection at trial is required because as [t]his Court has held, except for a claim of plain error, an appellant may not raise an argument for the first time on appeal." (Internal quotations and citations omitted.) *State v. Parsittie*, 9th Dist. Wayne No. 20AP0034, 2022-Ohio-415, ¶ 32. As Ullman did not object at trial and has not argued plain error on appeal, this Court will not develop a plain error argument for him. *See id.*

{¶19} Ullman's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT [ERRED] WHEN IT FORCED THE VICTIM TO TESTIFY UNDER THE THREAT OF CONTEMPT AND JAIL TERM AND NOT ADVISING THE VICTIM OF RIGHT TO COUNSEL[.]

{¶20} Ullman argues in his third assignment of error that the trial court violated D.R.'s rights under Marsy's Law. Ullman maintains that when D.R. indicated that she did not want to testify and the trial court threatened D.R. with contempt, the trial court failed to inform D.R. of her right to counsel, the potential criminal liability she faced, or her right to appeal.

{¶21} Here, we cannot say that Ullman has demonstrated that he has standing to pursue this argument. "The doctrine of standing applies to both civil and criminal matters[.]" *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, ¶ 30. Ullman has not shown that he has been aggrieved by the trial court's actions or explained how those same actions adversely impacted his rights. *See Ocwen Loan Servicing, L.L.C. v. Burgette*, 9th Dist. Lorain No. 15CA010785, 2016-Ohio-3102, ¶ 8; *see also State v. Rice*, 11th Dist. Lake Nos. 2018-L-065, 2018-L-066, 2019-Ohio-1415, ¶ 44, 50.

{¶22} Ullman's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

ULLMAN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE I, OF THE OHIO

CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENT OF UNITED STATES CONSTITUTION.

**{¶23}** Ullman argues in his fourth assignment of error that he was denied the effective assistance of trial counsel when his trial counsel failed to pursue a not guilty by reason of insanity defense.

**{¶24}** In order to prevail on a claim of ineffective assistance of counsel, Ullman must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Ullman must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Ullman must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland* at 694. This Court need not address both prongs of the *Strickland* test if the appellant fails to satisfy either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

**{¶25}** First, we note that the record discloses that trial counsel did explore Ullman's mental state. On March 17, 2021, an agreed entry was filed indicating that "Defense counsel noted that Defendant is currently scheduled to receive psychiatric and/or neurological examinations which he believes to be material to this case. Defense counsel therefore requested that the second pretrial in this matter be set for at least sixty days." Another entry was filed on May 17, 2021, indicating that, "[a]t the request of the parties this matter to be set for a Final Pretrial Conference

in approximately 45 days for an evaluation of the Defendant." On August 5, 2021, trial counsel filed a motion to continue the trial so that trial counsel could "acquire medical records and an expert witness." Trial was thereafter continued.

{¶26} The results of any evaluation or testing conducted are not in the record and neither is an expert report. Accordingly, there is no way to know whether any information gathered was inconsistent with a not guilty by reason of insanity defense. "When allegations of the ineffectiveness of counsel are premised on evidence outside the record, * * * the proper mechanism for relief is through the post-conviction remedies of R.C. 2953.21, rather than through a direct appeal." (Internal quotations and citations omitted.) *State v. Zeber*, 9th Dist. Summit No. 28481, 2017-Ohio-8987, ¶ 8. "Because [Ullman's] conviction arises from municipal court proceedings, post-conviction relief is not available to him." *Id.* Regardless, Ullman's arguments rely on evidence outside of the record and cannot be raised on direct appeal. *See id.* Given the foregoing, Ullman has not met his burden to overcome the presumption that trial counsel's representation fell within the range of reasonable assistance and was a matter of trial strategy. *See Strickland* at 689.

{¶27} Ullman has not demonstrated that trial counsel was ineffective. Ullman's fourth assignment of error is overruled.

### III.

{¶28} Ullman's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and FREELAND OLIVERIO, Assistant Prosecuting Attorney, for Appellee.