[Cite as *Dayton v. State*, 2021-Ohio-967.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF DAYTON, OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28818 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-3464 |
| | : | |
| STATE OF OHIO | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of March, 2021.

. . . . . . . . . . .

JOHN C. MUSTO, Atty. Reg. No. 0071512, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 101 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

CAITLYN NESTLEROTH JOHNSON, Atty. Reg. No. 0087724, & ZACHARY M. HOLSCHER, Atty. Reg. No. 0098039, Ohio Attorney General's Office, 30 East Broad Street, 16th Floor, Columbus, Ohio 43215
      Attorneys for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} The State of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, which sustain in part and overruled in part the City of Dayton's motion for summary judgment regarding whether certain statutory provisions were unconstitutional. The State filed a timely notice of appeal on June 9, 2020.

{¶ 2} On July 29, 2019, Dayton filed a Verified Complaint for Declaratory Judgment and Preliminary and Permanent Injunction, which requested that the trial court enjoin the enforcement of certain newly enacted provisions of Am.H.B. No. 62 (H.B. 62) on the grounds that the provisions violated Article XVIII, Section 3 of the Ohio Constitution, otherwise known as the "Home Rule Amendment." Specifically, Dayton asserted that the contested provisions of H.B. 62 unconstitutionally limited its Home Rule authority to implement a traffic law photo-monitoring enforcement program by implementing the following statutory provisions: 1) reinstating the S.B. 342 requirement that a law enforcement officer be present at every photo-monitoring device at all times while the device is in operation, R.C. 4511.093(B)(1); 2) reducing Dayton's local government fund allocation by the amounts collected from drivers for violations recorded by the photo-monitoring enforcement program and eliminating local government funds completely for municipalities that failed to report revenues from the program to the State, R.C. 5747.502(C), R.C. 5747.502(D), and R.C. 5747.502(F); 3) eliminating municipalities' ability to appoint administrative hearing officers to adjudicate photo-monitoring program tickets and conferring "exclusive jurisdiction" over such actions to municipal and county courts, R.C. 1901.20(A)(1), R.C. 1907.02(C); and 4) requiring municipalities to provide advance and non-recoverable court deposits to cover "all applicable court costs and fees" for civil actions related to the photo-monitoring program, R.C. 4511.096(C), R.C.

4511.099(A).

{¶ 3} On January 17, 2020, the State filed a motion for summary judgment, in which it argued that Dayton had the burden to establish that the contested provisions of H.B. 62 were unconstitutional.[1]  The State also argued that the General Assembly had the exclusive power to define the jurisdiction of lower courts and to provide for their maintenance and had the express constitutional authority to decide state spending.  The State further claimed that the contested provisions of H.B. 62 did not violate the Home Rule Amendment since the provisions constituted general laws.   Lastly, the State argued that Dayton's additional constitutional arguments failed because: 1) the unconstitutional conditions doctrine did not apply and had not been violated; 2) Dayton had no rights under its remaining constitutional challenges; and 3) Dayton had no other constitutional claims because the contested provisions did not violate the retroactivity clause, the one-subject rule, the uniformity clause, and/or the void for vagueness doctrine.

{¶ 4} On January 24, 2020, Dayton filed a motion for summary judgment, arguing that the contested provisions of H.B. 62 violated the Home Rule Amendment because the contested provisions solely limited Dayton's legislative power and did not prescribe rules of conduct upon citizens and the Home Rule Amendment prohibited limitations on municipal authority.  Dayton also argued that the contested provisions imposed unconstitutional conditions, were unconstitutionally retroactive, violated the void for vagueness doctrine, violated the uniformity clause, violated the one-subject rule, and violated the separation of powers doctrine.

{¶ 5} On May 27, 2020, the trial court sustained in part and overruled in part

---

[1] The State also refers to H.B. 62 as the "Reporting and Jurisdiction Law."

Dayton's motion for summary judgment and also sustained in part and overruled in part the State's motion for summary judgment. The trial court found that all of the contested provisions in H.B. 62, R.C. 4511.093, R.C. 5747.502(C), (D), (F), R.C. 4511.099(A), R.C. 1901.20(A)(1), R.C. 1907.02(C), and R.C. 4511.096, were unconstitutional. The trial court found that all of the contested provisions, with the exception of R.C. 1901.20(A)(1) and R.C. 1907.02(C), were unconstitutional violations of the Home Rule Amendment. Specifically, the trial court found that the restrictions in R.C. 5747.502 requiring the collection and reporting of civil fines and penalizing Dayton for operating a photo-monitoring program violated the Home Rule Amendment because they did not serve an overriding statewide interest and failed to prescribe rules of conduct upon citizens in general. With respect to the provisions of R.C. 4511.099(A) and R.C. 4511.096 requiring Dayton to file every notice of liability issued with the municipal court and deposit a non-refundable fee, including a filing fee and court costs for every notice, the trial court ruled that these provisions also violated the Home Rule Amendment because they did not serve an overriding statewide interest and failed to prescribe rules of conduct upon citizens in general. The trial court further found that the provisions limited Dayton's legislative authority in that it controlled the procedure Dayton must follow when issuing notices of liability without serving an overriding statewide interest and without prescribing rules of conduct upon citizens in general. The trial court held that R.C. 1901.20(A)(1) and R.C. 1907.02(C) were general laws that did not violate the Home Rule Amendment.

{¶ 6} The trial court also found that all of the contested provisions in H.B. 62 unconstitutionally violated the one-subject rule, including R.C. 1901.20(A)(1) and R.C. 1907.02(C). While noting that the General Assembly has wide powers when enacting

legislation, the trial court stated, however, that sections of an appropriation bill violate the one-subject rule when they fail to share a common purpose with and have no discernible, practical, or rational relationship to other provisions in the bill. Therefore, the trial court found that the contested provisions in H.B. 62 were not related to the transportation budget, but rather were inserted as last minute riders after having been voted down by the state senate during the committee process. The trial court found that the contested provisions were not at all related to the appropriation of funds for transportation purposes, thus violating the one-subject rule and rendering the contested provisions unconstitutional. The trial court sustained the State's motion for summary judgment with respect to Dayton's other constitutional arguments.

{¶ 7} It is from this judgment that the State now appeals.

**Statutory History**

{¶ 8} On June 12, 2002, Dayton enacted Ordinance 30114-02, which authorized an "automated traffic control photographic system" (ATCPS) for placement at intersections throughout the city. Initially, the system only provided for the enforcement of red light violations. Subsequently, on February 17, 2010, the system was modified to provide for the enforcement of speed violations as well (Ordinance 30965-10). The ordinances were codified in Dayton R.C.G.O. 70.21. Dayton states that the purposes of the traffic law photo-monitoring system were to reduce the number of red light and speeding violations and automobile accidents in the city and to conserve limited police resources.

{¶ 9} Am.Sub.S.B. No. 342 was signed into law on December 19, 2014, and became effective on March 23, 2015. The following Revised Code sections were

enacted as a result of S.B. No. 342's passage: 4511.092; 4511.093; 4511.095; 4511.096; 4511.097; 4511.098; 4511.099; 4511.0910; 4511.0911; 4511.0912; 4511.0913; 4511.0914; and 4511.204(C)(2). Viewed collectively, the new sections provided a comprehensive definition section (R.C. 4511.092) and expanded upon existing requirements for municipalities that employ the use of traffic photo-monitoring systems.

{¶ 10} Significantly, in *City of Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, Dayton challenged the constitutionality of certain provisions contained in S.B. 342, on the grounds that they violated Article XVIII, Section 3 of the Ohio Constitution, the Home Rule Amendment. In its complaint in that case, Dayton specifically challenged the requirement in R.C. 4511.093(B)(1) that a law enforcement officer be present at the location of any traffic law photo-monitoring device when it was being operated. Dayton also challenged R.C. 4511.095(A)(2), the provision which required that a local authority conduct a public information campaign and safety study of the location under consideration for the placement of a new device before any new photo-monitoring equipment could be deployed. In Dayton's motion for summary judgment in that case, in addition to arguing that R.C. 4511.093(B)(1) and 4511.095(A)(2) were unconstitutional, as argued in its complaint, Dayton also asserted that R.C. 4511.0912 violated the Home Rule Amendment because it prohibited municipal authorities from issuing speeding tickets for violations recorded by traffic law photo-monitoring devices unless the individual was driving more than six miles per hour above the speed limit in a school zone and/or park or ten or more miles per hour above the speed limit in any other location. Upon review, the Ohio Supreme Court held that the contested provisions in S.B. 342 violated the Home Rule Amendment and struck down the offending provisions.

*Id.* at ¶ 34.

{¶ 11} Thereafter, the Ohio General Assembly enacted H.B. 62, which was the transportation budget bill for Ohio for the fiscal years 2019 through 2021. As previously stated, Dayton contends that the contested provisions of H.B. 62 unconstitutionally limit its Home Rule authority to implement traffic law photo-monitoring enforcement program by implementing the following statutory provisions: 1) reinstating the S.B. 342 requirement that a law enforcement officer be present at every photo-monitoring device at all times while the device is in operation, R.C. 4511.093(B)(1); 2) reducing Dayton's local government fund allocation by the amounts collected from drivers for violations recorded by the photo-monitoring enforcement program and eliminating local government funds completely for municipalities that fail to report revenues from the program to the State, R.C. 5747.502(C), R.C. 5747.502(D), and R.C. 5747.502(F); 3) eliminating municipalities' ability to appoint administrative hearing officers to adjudicate photo-monitoring program tickets and conferring "exclusive jurisdiction" over such actions to municipal and county courts, R.C. 1901.20(A)(1), R.C. 1907.02(C); and 4) requiring municipalities to provide advance and non-recoverable court deposits to cover "all applicable court costs and fees" for civil actions related to the photo-monitoring program, R.C. 4511.096(C), R.C. 4511.099(A).

## Standard of Review

{¶ 12} This Court has previously noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court

uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997)) (citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ.R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90-CA-96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehous*[*ing* ] *Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 [46] (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93,

662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014-Ohio-1973, ¶ 17-18.

{¶ 13} Because they are interrelated, the State's first four assignments of error will be discussed together. They state:

THE HOME RULE AMENDMENT DOES NOT GIVE MUNICIPALITIES ANY AUTHORITY OVER THE JURISDICTION AND MAINTENANCE OF LOWER COURTS OR STATE SPENDING. THEREFORE, THE TRIAL COURT ERRED IN HOLDING THAT THE HOME RULE AMENDMENT APPLIES TO STATUTORY PROVISIONS THAT REQUIRE MUNICIPALITIES TO FILE THEIR TRAFFIC-CAMERA CITATIONS WITH AND PAY A FILING FEE TO THE COURT THAT HAS EXCLUSIVE JURISDICTION OVER THEM AND THAT REDUCE THE AMOUNT OF STATE MONEY THEY RECEIVE IF THEY OPERATE TRAFFIC-CAMERA PROGRAMS.

ASSUMING ARGUENDO THAT THE HOME RULE AMENDMENT APPLIES, THE TRIAL COURT ERRED IN CONCLUDING THAT STATE STATUTES ESTABLISHING A UNIFORM STATEWIDE PROCESS FOR ADJUDICATING TRAFFIC-CAMERA CITATIONS AND THAT RE-ALLOCATE STATE MONEY FROM MUNICIPALITIES THAT OPERATE

TRAFFIC-CAMERA PROGRAMS TO OTHER TRANSPORTATION SAFETY PURPOSES LIMITS MUNICIPAL AUTHORITY WITHOUT SERVING AN OVERRIDING STATE INTEREST AND, THEREFORE, DO NOT SATISFY THE THIRD PRONG OF THE GENERAL LAW TEST SET FORTH IN *CANTON V. STATE*, 95 OHIO ST.3D 149, 766 N.E.2D 963 (2002).

ASSUMING ARGUENDO THAT THE HOME RULE AMENDMENT APPLIES, THE TRIAL COURT ERRED IN CONCLUDING THAT STATE STATUTES ESTABLISHING A UNIFORM PROCESS FOR ADJUDICATING TRAFFIC-CAMERA CITATIONS THAT INCLUDE CITED MOTORISTS' OPTIONS UPON RECEIVING SUCH A CITATION AND THAT ESTABLISH GENERALLY APPLICABLE RULES FOR THE DISTRIBUTION OF STATE MONEY DO NOT ESTABLISH RULES OF CONDUCT FOR CITIZENS GENERALLY AND, THEREFORE, DO NOT SATISFY THE FOURTH PRONG OF THE GENERAL LAW TEST SET FORTH IN *CANTON V. STATE*, 95 OHIO ST.3D 149, 766 N.E.2D 963 (2002).

THE TRIAL COURT ERRED IN FINDING THAT STATE STATUTES VIOLATE THE HOME RULE AMENDMENT WHEN THE CHALLENGING MUNICIPALITY FAILED TO ESTABLISH THAT ITS ORDINANCE CONFLICTS WITH THE CHALLENGED STATE LAW BECAUSE THE EXISTENCE OF A CONFLICT IS AN ESSENTIAL ELEMENT OF A HOME-RULE CLAIM.

{¶ 14} In its first assignment, the State contends that the trial court erred when it held that the contested statutory provisions that require municipalities to file their traffic camera citations with the court and to pay a filing fee to the court and that reduce the amount of state money municipalities receive if they operate a traffic camera program violate the Home Rule Amendment. Specifically, the State argues that there is no limit to the authority of the General Assembly to regulate lower court jurisdiction and to provide for the financial maintenance of lower courts, and the contested provisions noted above provide a constitutional basis to enforce its powers. In its second and third assignments, the State argues that even if the Home Rule Amendment applied to the statutes at issue, the trial court erred when it found that H.B. 62 failed to satisfy the third and fourth prongs of the general law test set forth in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963. Finally, the State argues that the trial court erred when it found that Dayton had established that a conflict existed between H.B. 62 and the local ordinances establishing the traffic-camera program.

### The Home Rule Amendment

{¶ 15} Under the Home Rule Amendment to the Ohio Constitution, "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws*." Article XVIII, Section 3, Ohio Constitution.

{¶ 16} The Home Rule Amendment provides municipalities with the "broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." *State ex rel. Morrison v. Beck Energy Corp.,* 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128,

¶ 14, citing *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Therefore, a municipal ordinance must yield to a state statute if 1) the ordinance is an exercise of police power, rather than of local self-government; 2) the statute is a general law; and 3) the ordinance is in conflict with the statute. *See Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255

{¶ 17} Therefore, courts must initially determine if the ordinance at issue is an exercise of the city's "police power," rather than of local self-government. *Id.* at ¶ 17, citing *Canton* at ¶ 9. "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Id.* at ¶ 18, quoting *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23. The second step of the *Mendenhall* test is necessary only if the city ordinance involves an exercise of police power and requires a court to determine whether the state law is a general law under the four-part test set forth in *Canton*. *Id.* at ¶ 17, citing *Canton*, 95 Ohio St.3d 149, 766 N.E.2d 963, at ¶ 9. The last step in the *Mendenhall* test is to determine whether the ordinance conflicts with the statute, i.e., whether the ordinance permits that which the statute forbids, and vice versa. If the ordinance conflicts with the general law, it will be held unconstitutional. *Id.* at ¶ 28. If there is no conflict, the municipal action is permissible even though the statute is a general law. *Id.*

{¶ 18} "A general law has been described as one which promotes statewide uniformity." *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted*, 65 Ohio St.3d 242, 244, 602 N.E.2d 1147 (1992). Furthermore, general laws are those "enact[ed] to safeguard the peace, health, morals, and safety, and to protect the property of the people

of the state." *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 83, 167 N.E. 158 (1929).

"Once a matter has become of such general interest that it is necessary to make it subject

to statewide control as to require uniform statewide regulation, the municipality can no

longer legislate in the field so as to conflict with the state." *State ex rel. McElroy v. Akron*,

173 Ohio St. 189, 194, 181 N.E.2d 26 (1962).

{¶ 19} A statute qualifies as a general law if it satisfies four criteria. The statute

must: 1) be part of a statewide and comprehensive legislative enactment; 2) apply to all

parts of the state alike and operate uniformly throughout the state; 3) set forth police,

sanitary or similar regulations, rather than purport only to grant or limit legislative power

of a municipal corporation to prescribe those regulations; and 4) prescribe a rule of

conduct upon citizens generally. *Mendenhall* at ¶ 20; *Canton* at syllabus. If a statute

meets the *Canton* general-law test, then the statute takes precedence over any conflicting

municipal ordinances. *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d

176, ¶ 15.[2] If, however, "the general-law test is not satisfied, then the statute is 'an

unconstitutional attempt to limit the legislative home-rule powers' of municipalities." *Id.*,

quoting *Canton* at ¶ 10.

{¶ 20} Neither party disputes that Dayton ordinance R.C.G.O. 70.21, enacting an

automated photo-enforcement program, was lawfully enacted pursuant to its

constitutionally-protected home rule powers. In *Walker v. Toledo*, 143 Ohio St.3d 420,

---

[2] We note that the 2017 *Dayton* opinion was a plurality opinion in which the lead opinion held that the traffic-camera laws at issue were not general laws (and therefore were unconstitutional) because they violated the third prong of the *Canton* test. The concurring opinion also held that the traffic-camera laws at issue were not general laws (and therefore unconstitutional), but for the reason that they violated the fourth prong of the *Canton* test.

2014-Ohio-5461, 39 N.E.3d 474, ¶ 3, the Ohio Supreme Court reaffirmed its holding in *Mendenhall* that municipalities, such as Dayton, have home rule authority under Article XVIII of the Ohio Constitution to impose civil liability on traffic violators through the use of a photo enforcement system for speed and red light violations. *Walker* also found that "Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances, and that these administrative proceedings must be exhausted before offenders or the municipality can pursue judicial remedies." *Id.* at ¶ 3.

{¶ 21} Furthermore, it is undisputed that, pursuant to the *Mendenhall* test, the local ordinances encompass the police power. "[T]he regulation of traffic is an exercise of police power that relates to public health and safety, as well as to the general welfare of the public." *Mendenhall* at ¶ 19, citing *Linndale v. State*, 85 Ohio St.3d 52, 54, 706 N.E.2d 1227 (1999).

{¶ 22} As previously stated, H.B. 62 reinstated the S.B. 342 requirement that a law enforcement officer be present at every photo-monitoring device at all times while the device is in operation. R.C. 4511.093(B)(1). However, that statute was found to be an unconstitutional violation of the Home Rule Amendment in *Dayton*. *Id.* at ¶ 34. "We determine that the officer-present provision in R.C. 4511.093(B)(1) fails the general-law test in *Canton*, and we hold that this statute violates Dayton's home-rule authority as provided by Article XVIII, Section 3 of the Ohio Constitution." *Id.* Therefore, since the Supreme Court has already declared R.C. 4511.093(B)(1) to be unconstitutional, we need not address it.

{¶ 23} The State contends that the "exclusive jurisdiction" provisions in R.C.

1901.20(A)(1) and R.C. 1907.02(C) allow it not only to define the jurisdiction of municipal courts, but also to legislate the procedures the municipalities must follow if they choose to implement a photo enforcement program. We disagree.

{¶ 24} R.C. 1901.20(A)(1) states in pertinent part:

The municipal court has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance. The municipal court does not have jurisdiction over a violation that is required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code. However, the municipal court has jurisdiction over the violation of a vehicle parking or standing resolution or regulation if a local authority, as defined in division (D) of section 4521.01 of the Revised Code, has specified that it is not to be considered a criminal offense, if the violation is committed within the limits of the court's territory, and if the violation is not required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code.

{¶ 25} R.C. 1907.02(C) as enacted by H.B. 62 sets forth jurisdiction for criminal cases and parking violations. It provides, "A county court has exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance, if the violation is committed within the limits of the court's territory."

{¶ 26} The Ohio Constitution provides that "[t]he judicial power of the state is

vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the Supreme Court as may from time to time be established by law." Article IV, Section 1, Ohio Constitution. Under this clause, the General Assembly has the exclusive power to create "inferior" courts, also referred to as statutory courts. *State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 602, 165 N.E. 298 (1929). Pursuant to this authority, the General Assembly has established municipal courts, county courts, and mayor's courts. *See Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 9 (referring to municipal, county, and mayor's courts as statutory courts); *State ex rel. Cherrington v. Hutsinpiller*, 112 Ohio St. 468, 147 N.E. 647 (1925), syllabus ("The municipalities of this state have no power, by charter or otherwise, to create courts and appoint judges thereof, such exercise of power being in violation of sections 1 and 10, [A]rticle IV, of the Constitution of Ohio."); *State ex rel. Boston Hts. v. Petsche*, 27 Ohio App.3d 106, 499 N.E.2d 1250 (Section 1, Article IV of the Ohio Constitution vests exclusive power in the General Assembly to create courts inferior to the Supreme Court and thus a village cannot create a mayor's court by local ordinance).

{¶ 27} In support of its argument, the State cites *Ramey* for the proposition that the General Assembly has exclusive jurisdiction over the regulation of inferior courts in Ohio. *Id.* at paragraph three of the syllabus (stating that the General Assembly has the authority to require municipalities to provide court facilities). However, *Ramey* had "nothing whatsoever to do with arbitration or rules of court * * *." *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 64-65. The State also cites a recent case, *State ex rel. Magsig v. Toledo,* 160 Ohio St.3d 342, 2020-Ohio-3416, 156 N.E.3d 899, for the

proposition that the General Assembly has unlimited authority to regulate the courts. *Magsig* stated in pertinent part:

> * * * [A]s amended by H.B. 62 in 2019, R.C. 1901.20(A)(1) now states that municipal courts have "*exclusive jurisdiction* over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." (Emphasis added). The current version of R.C. 1901.20(A)(1) clearly and unambiguously reserves for municipal courts exclusive authority to adjudicate every civil traffic-law violation. And that statutory grant of jurisdiction "cannot be impaired or restricted by any municipal charter or ordinance provision." *Cupps v. Toledo*, 170 Ohio St. 144, 151, 163 N.E.2d 384 (1959).

{¶ 28} In our view, neither *Ramey* nor *Magsig* grant the General Assembly unlimited authority to regulate the courts. Rather, the Ohio Supreme Court's holding in *Magsig* only indicates that R.C. 1901.20(A)(1) in H.B. 62 "clearly and unambiguously" reserved for municipal courts exclusive authority to adjudicate every civil traffic-law violation, including violations of the photo enforcement program. While the General Assembly has the power to create inferior courts, it does not have unlimited authority to regulate municipal courts' adjudicatory policies and/or rules of court.

{¶ 29} We also note that the Ohio Supreme Court explicitly noted in *Magsig* that the city (Toledo) had not challenged the constitutionality of the exclusive-jurisdiction clause of R.C. 1901.20(A) as enacted by H.B. 62. *Id.* at ¶ 16. Nevertheless, the *Magsig* court stated that "the authority of the General Assembly to set the jurisdiction of the municipal courts is undisputed." *Id.*

**{¶ 30}** Therefore, the only issue remaining is whether the contested provisions of H.B. 62 qualify as a general law under the four-pronged test in *Canton,* 95 Ohio St.3d 149, 766 N.E.2d 963. Initially, we note that neither party disputes that the contested provisions of H.B. 62 (1) are part of a statewide and comprehensive legislative enactment and (2) apply to all parts of the state alike (if a local ordinance enacts a photo enforcement program). Thus, we must determine whether the contested provisions of H.B. 62 satisfy the third and fourth steps of the *Canton* test, i.e., whether the state statutes at issue set forth police, sanitary, or similar regulations or do they grant or limit the legislative power of a municipal corporation to set forth its own police, sanitary, or similar regulations, and whether the state statutes prescribe a rule of conduct upon citizens generally.

**Do the State Statutes Set Forth a Police, Sanitary, or Similar Regulation, or Do They Merely Grant/Limit the Legislative Power of a Municipal Corporation to Create Such Regulations?**

The third element of the *Canton* test requires that, for a statute to be considered a general law, it must set forth police, sanitary, or similar regulations, instead of merely granting or limiting a municipality's power to create such regulations. In undertaking this analysis, we keep in mind that " 'a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an overriding statewide interest would directly contravene the constitutional grant of municipal power.' " *Canton* at ¶ 32, quoting *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982). In *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, the Ohio Supreme Court stated:

> In *Canton*, the court considered whether R.C. 3781.184, which

related to the zoning of property for manufactured homes, violated the Home Rule Amendment. R.C. 3781.184(C) provided that political subdivisions must allow manufactured homes to be placed in areas where single-family residences were permitted. R.C. 3781.184(D) created an exception to division (C) that allowed private-property owners to prohibit manufactured homes on their land by way of restrictive covenants in deeds. The court determined that "R.C. 3781.184(C), on its face, appears to serve an overriding state interest in providing more affordable housing options across the state." *Canton* at ¶ 33. It then determined, however, that "the exception contained in R.C. 3781.184(D) defeats this purpose." *Id.* According to the court, R.C. 3781.184(C) would have "very little, if any, impact in areas of development having effective deed restrictions or active homeowner associations. Instead, the statute [would] effectively apply only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations." *Id.* at ¶ 30. Because the statute did not serve an overriding state interest, the *Canton* court determined that R.C. 3781.184(C) "purports only to grant or limit the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations." *Id.* at ¶ 33.

This court confronted the third prong of the *Canton* test in *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967. In *Ohioans for Concealed Carry*, the court considered whether a municipal ordinance that prohibited licensed gun owners from

carrying a concealed gun within a city's parks was constitutional under the Home Rule Amendment. The municipal ordinance conflicted with a state statute that allowed a licensed gun owner to carry a gun anywhere in the state, subject to several exceptions that did not include municipal parks. In analyzing the third prong of the *Canton* general-law test, the court determined that the statute went beyond preventing cities from enacting conflicting legislation because the statute "provide[d] a program to foster proper, legal handgun ownership in this state." *Id.* at ¶ 50. The court determined that "[t]he statute therefore represents both an exercise of the state's police power and an attempt to limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations." *Id.*; *see also Mendenhall* [*v. Akron*]*,* 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 24 (determining that R.C. 4511.21 "has extensive scope and does more than grant or limit state powers").

This court confronted the third prong of the *Canton* test again in *Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644. The city of Cleveland sought a declaration that former R.C. 4921.25, 2012 Am.Sub.H.B. No. 487.1 was unconstitutional under the Home Rule Amendment. Former R.C. 4921.25 vested the Public Utilities Commission of Ohio ("PUCO") with the authority to regulate towing entities as for-hire motor carriers, but the second sentence of the statute provided that "[s]uch an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering,

or regulation of entities that tow motor vehicles." Cleveland challenged the second sentence of the statute as unconstitutionally infringing on local authorities' abilities to regulate towing companies. This court determined that the statute, when read as a whole, did not merely limit the legislative power of municipalities to set forth police, sanitary, or similar regulations, *Cleveland* at ¶ 13; nevertheless, the court isolated the second sentence of the statute, analyzed it separately, and determined that it was unconstitutional, *id.* at ¶ 16-17. According to the court, "[u]nlike the first sentence of R.C. 4921.25, which subjects towing entities to PUCO regulation, the second sentence fails to set forth any police, sanitary, or similar regulations." *Id.* at ¶ 16.

Under this court's precedent, so long as a statute serves an overriding state interest with respect to police, sanitary, or similar regulations, then the third prong of the *Canton* general-law test is satisfied, even if the statute limits the legislative authority of municipalities. However, when a statute expressly grants or limits the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, without serving an overriding statewide interest, then the statute, or a portion of it, violates the Home Rule Amendment. As demonstrated in *Cleveland*, the analysis under the third Canton prong requires consideration of the individual statutory provisions.

*Id.* at ¶ 17-20.

{¶ 31} Based upon its prior opinions discussed above, the *Dayton* court lead

opinion held that the three traffic-camera statutes failed the third element of the *Canton* test and improperly infringed upon municipal power. *Id.* at ¶ 21-27. The lead opinion found that the three contested provisions of S.B. 342 -- R.C. 4511.093(B)(1) (requiring police presence at the location of a traffic camera); R.C. 4511.0912 (prohibiting a municipality from issuing a fine for speeding based on a traffic camera unless the driver's speed exceeded the speed limit by six or ten miles per hour); and R.C. 4511.095 (requiring a municipality to perform a study and public-information campaign before using the cameras) -- did not serve an overriding statewide interest. *Id.*

### Do the State Statutes Prescribe a Rule of Conduct on Citizens Generally?

{¶ 32} As previously stated, in the *Dayton* court's concurring opinion, two justices agreed that the contested provisions of S.B. 342 were unconstitutional, but only because they found that the statutes failed under the fourth element of the *Canton* test, i.e., they failed to prescribe a rule of conduct upon citizens generally. The concurring justices stated the basis for their rationale as follows:

> Under the fourth prong of the *Canton* test, a statute must "prescribe a rule of conduct upon citizens generally" to qualify as a general law. [*Canton*] at ¶ 21. The statute at issue in *Canton*—forbidding political subdivisions from prohibiting or restricting the location of permanently sited manufactured homes in any zone or district in which a single-family home was permitted—did not satisfy that requirement because it "applie[d] to municipal legislative bodies, not to citizens generally." *Id.* at ¶ 2, 36. In contrast, a statute that established speed limits and stated, " 'No person shall operate a motor vehicle * * * at a speed greater or less than is

reasonable or proper,' " prescribed a rule of conduct upon citizens and satisfied the fourth prong of the *Canton* test. *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 25, quoting R.C. 4511.21.

In *Linndale v. State*, 85 Ohio St.3d 52, 706 N.E.2d 1227 (1999), this court considered a home-rule challenge to former R.C. 4549.17, which prohibited local law-enforcement officers from issuing speeding and excess-weight citations on interstate freeways when (1) less than 880 yards of the freeway were within the locality's jurisdiction, (2) local officers had to travel outside their jurisdiction to enter onto the freeway, and (3) local officers entered the freeway with the primary purpose of issuing the citations. *Linndale* predates *Canton*, but the court nevertheless addressed factors that it would later incorporate into the *Canton* general-law test. *Linndale* at 55, 706 N.E.2d 1227. The court held that R.C. 4549.17 was not a general law but was simply a limit on the legislative powers of municipalities to adopt and enforce police regulations. *Id.* As relevant here, the court stated that the statute did "not prescribe a rule of conduct upon citizens generally." *Id.*

We reached a similar conclusion in *Youngstown v. Evans*, 121 Ohio St. 342, 168 N.E. 844 (1929). The statute at issue there limited municipalities' authority to set punishments for misdemeanor violations of a municipal ordinance. This court stated that the statute was "not a general law in the sense of prescribing a rule of conduct upon citizens generally. It is a limitation upon law making by municipal legislative bodies." *Id.* at 345,

168 N.E. 844.

*Dayton,* 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, at ¶ 41-43.

{¶ 33} Applying the reasoning set forth in the above cases, the *Dayton* court stated the following:

Unlike the speed-limit statute in *Mendenhall*, the contested provisions here do not dictate a rule of conduct applicable to citizens of the state. Indeed, nothing in S.B. 342 directs citizens' conduct with respect to the operation of a motor vehicle. Driving in excess of the speed limit and running a red light are violations of the law, whether or not a traffic camera exists to record the violation and whether or not a law-enforcement officer has authority to issue a citation. *The contested provisions are phrased in terms of what a local authority shall or shall not do. They apply not to citizens but to municipalities.* Like the statute in *Linndale*, the contested provisions of S.B. 342 merely limit municipal authority to enforce other substantive laws.

(Emphasis added.) *Id.* at ¶ 44. Accordingly, the concurring justices in *Dayton* found that the contested provisions in S.B. 342 violated the fourth element of the *Canton* test since they did not prescribe a rule of conduct upon citizens generally. *Id.* at ¶ 46.

**Analysis of the Relevant Contested Provisions in H.B. 62**

**1) Contested Provision R.C. 5747.502**

{¶ 34} As previously stated, H.B. 62 requires a local authority operating a photo enforcement program during the preceding fiscal year to file a report with the tax

commissioner that includes a detailed statement of the civil fines the local authority collected from drivers for any violation of any local ordinance that were based upon evidence recorded by a photo-monitoring device. R.C. 5747.502(B). A local authority's payments from the state local government fund were then to be reduced in an amount equal to the fines reported in the report to the tax commissioner. R.C. 5747.502(C). If the local authority did not file a report as required, all payments of local government funds to the locality were to cease until a report was filed. R.C. 5747.502(D). An amount equal to the payments withheld, except for fines incurred in school zones, was then deposited into an Ohio highway and transportation safety fund. R.C. 5747.502(F). An amount equal to payments withheld for violations in school zones was to be paid to the local authority to be used specifically for school safety purposes. R.C. 5747.502(C)(4).

{¶ 35} The State argues that the trial court erred when it found that the contested provisions in R.C. 5747.502 failed to satisfy the third prong of the *Canton* test. Specifically, the State argues that 1) the sole power of making appropriations regarding public revenue lies with the General Assembly; 2) the State is under no duty to appropriate funding to the municipalities; 3) the General Assembly is authorized to pass laws requiring reports from municipalities as to their financial condition and transactions; and 4) the General Assembly is authorized to withhold discretionary funds commensurate with local revenue from operating traffic cameras. The State contends that Dayton has cited no authority supporting a conclusion that cities' home-rule authority limits the General Assembly's spending power. The State also argues that the Ohio Constitution does not require the General Assembly to have a local government fund or to distribute funding in any particular manner. Finally, the State argues that, while Dayton is free to operate its

traffic camera program, that decision does not limit the General Assembly's authority to withhold discretionary funds commensurate with local revenue raised by operating the traffic cameras.

{¶ 36} Conversely, Dayton argues that the State cannot use its unfettered spending authority to punish a municipality for exercising its constitutional home-rule authority by implementing a traffic camera program, thereby making the program too expensive and cost prohibitive to operate and ultimately resulting in its elimination. Dayton also argues that the Home Rule Amendment protects against both direct and indirect limitations of municipal authority.

{¶ 37} We agree with the trial court and conclude that the contested provisions of R.C. 5747.502 fail to satisfy the third prong of the *Canton* test, because they unconstitutionally limit Dayton's legislative authority regarding its traffic camera photo enforcement program, dictate the collection and reporting of fines, and subject Dayton to penalties for operating its program. Additionally, we find that the State has failed to set forth its overriding interest for setting forth such regulations. *See Newburgh Hts. v. State,* 2021-Ohio-61, __ N.E.3d __, ¶ 40 (8th Dist.) (finding no overriding state interest in R.C. 5747.502, and that the state has failed to set forth a viable one; "Just because the state has the power to control state spending does not mean that it has the power to penalize local authorities who are operating traffic-camera programs, something the Supreme Court stated local authorities had the authority to do under the Home Rule Amendment").

{¶ 38} Furthermore, we agree with the trial court that the contested provisions in R.C. 5747.502 fail to satisfy the fourth element of the *Canton* test, because the provisions fail to prescribe a rule of conduct on citizens generally; they are directed solely at local

authorities. *Id.* at ¶ 41. The contested provisions of R.C. 5747.502 are not general laws and are unconstitutional attempts to limit the legislative home-rule powers of municipalities. Accordingly, the trial court did not err when it granted summary judgment in favor of Dayton with respect to this issue.

**2) Contested Provision R.C. 4511.096(C)**

**{¶ 39}** R.C. 4511.096 sets forth the officer review requirements of a traffic law photo monitoring device and contains the following contested provisions:

(C) Within thirty days of the traffic law violation, the local authority or its designee may issue and send by regular mail a ticket charging the registered owner with the violation. The ticket shall comply with section 4511.097 of the Revised Code. If the local authority mails a ticket charging the registered owner with the violation, the local authority shall file a certified copy of the ticket with the municipal court or county court with jurisdiction over the civil action.

Thus, pursuant to R.C. 4511.096(C), if a local authority issues and mails a ticket charging the registered owner of a vehicle with a violation based upon evidence from a traffic camera, the local authority must also file a certified copy of the ticket with the municipal court or county court vested with jurisdiction over the civil action.

**{¶ 40}** We conclude that the trial court did not err when it found that R.C. 4511.096(C) was not a not general law and was an unconstitutional attempt to limit the legislative home-rule powers of municipalities. Simply put, we find no overriding state interest in R.C. 4511.096(C), and the State has failed to set forth a viable one. We agree with the trial court that this provision fails to satisfy the third element of the *Canton* test

because, on its face, the statute arbitrarily attempts to control the procedure a municipality must follow when issuing, mailing, and filing citations for violators without sufficiently serving an overriding state interest.

{¶ 41} Furthermore, we agree with the trial court that R.C. 4511.096(C) fails to satisfy the fourth element of the *Canton* test, because the provisions fail to prescribe a rule of conduct on citizens generally; rather, the contested provision is solely directed at local authorities. Accordingly, R.C. 4511.096(C) is not a general law and is an unconstitutional attempt to limit the legislative home-rule powers of municipalities. The trial court did not err when it granted summary judgment to Dayton with respect to this issue.

### 3) Contested Provision R.C. 4511.099(A)

{¶ 42} R.C. 4511.099(A) states in pertinent part:

[W]hen a certified copy of a ticket issued by a local authority based on evidence recorded by a traffic law photo-monitoring device is filed with the municipal court or county court with jurisdiction over the civil action, the court shall require the local authority to provide an advance deposit for the filing of the civil action. The advance deposit shall consist of all applicable court costs and fees for the civil action. The court shall retain the advance deposit regardless of which party prevails in the civil action and shall not charge to the registered owner or designated party any court costs and fees for the civil action.

{¶ 43} Here, the trial court did not err when it found that R.C. 4511.099(A) was not a general law and was an unconstitutional attempt to limit the legislative home-rule

powers of municipalities.    Again, we agree with the trial court that R.C. 4511.099(A) fails to satisfy the third element of the *Canton* test, because it unconstitutionally limits Dayton's legislative authority regarding its photo enforcement program by attempting to control the procedure Dayton must follow when issuing citations to violators by requiring advance court deposits but without providing a viable overriding state interest for doing so.

{¶ 44} However, "[e]ven if we assume that the state's interest satisfies the third prong of the *Canton* test, R.C. 4511.099(A) still only prescribes rules for the local municipalities and not citizens of the state." *Newburgh Hts.* at ¶ 57.    Thus, we find that R.C. 4511.099(A) fails to satisfy the fourth element of the *Canton* test.    Therefore, R.C. 4511.099(A) is not a general law and is an unconstitutional attempt to limit the legislative home-rule powers of municipalities.

**Conflict Between Local Ordinance and H.B. 62**

{¶ 45} Finally, in regard to the State's fourth assignment of error, i.e., whether a conflict exists between Dayton's local ordinances setting forth its photo enforcement program and the contested provisions of H.B. 62, the State contends that Dayton cannot show that a conflict exists.    In *Newburgh Heights*, the Eighth District stated:

> * * * The state statutes in this case [H.B. 62] indirectly prohibit what the local ordinances permit.    The Supreme Court of Ohio has recognized conflict by implication. *See Mendenhall* at ¶ 31-32.    In Mendenhall, the Supreme Court found no conflict by implication because the issue was whether the state "had exclusivity in the area of speed enforcement," which the court held it did not. Id. at ¶ 33.    Here, however, the state is attempting to exclusively control (1) the funds local authorities receive from photo

enforcement programs, (2) where citizens can challenge a photo enforcement citation, and (3) who pays the court costs with respect to challenges to a photo enforcement citation. We therefore find that a conflict exists between the contested provisions of H.B. 62 and the local ordinances.

*Id.* at ¶ 26. We agree with this rationale and find that a conflict does in fact exist between the contested provisions of H.B. 62 and Dayton's traffic-camera ordinances.

{¶ 46} In light of the foregoing, the State's first, second, third, and fourth assignments of error are overruled.

{¶ 47} The State's fifth assignment of error states:

THE TRIAL COURT ERRED IN FINDING THAT THE ENACTMENT OF CERTAIN STATUTES VIOLATES THE SINGLE-SUBJECT RULE BECAUSE IT FAILED TO APPLY THE PROPER TEST THAT LOOKS ONLY FOR A BLATANT DISUNITY OF SUBJECT MATTER BETWEEN THE CHALLENGED PROVISIONS AND THE REST OF THE BILL AND, INSTEAD, USURPED THE LEGISLATURE'S DISCRETION BY LOOKING TO THE SIGNIFICANT AND CONTROVERSIAL NATURE OF THE CHALLENGED LAWS.

{¶ 48} In its final assignment, the State argues that the trial court erred when it found that certain contested provisions in H.B. 62 violated the one-subject rule.

{¶ 49} The one-subject rule is contained in Section 15(D), Article II of the Ohio Constitution, which provides, "No bill shall contain more than one subject, which shall be clearly expressed in its title." "The one-subject provision was incorporated into the Ohio

Constitution of 1851 as an integral part of the efforts of the Second Constitutional Convention to rein in the inordinate powers that were previously lodged in the General Assembly and to ultimately achieve a proper functional balance among the three branches of our state government." *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, ¶ 29. As the Ohio Supreme Court explained in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 495, 715 N.E.2d 1062 (1999):

> The one-subject rule was added to our Constitution in 1851. It was one of the proposals resulting from the efforts of the Second Constitutional Convention, of 1850-1851. *See* Kulewicz, The History of the One-Subject Rule of the Ohio Constitution (1997), 45 Cleve.St.L.Rev. 591, 591-593. The genesis of support for this rule had its roots in the same concerns over the General Assembly's dominance of state government that formed the most significant theme of the Constitution of 1851. These concerns, illustrated earlier in this opinion, resulted in the placement of concrete limits on the power of the General Assembly to proceed however it saw fit in the enactment of legislation. The one-subject rule is one product of the drafters' desire to place checks on the legislative branch's ability to exploit its position as the overwhelmingly pre-eminent branch of state government prior to 1851.

{¶ 50} The purpose of the one-subject rule is "to prevent logrolling -- ' * * * the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained

majority approval separately.' " *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142, 464 N.E.2d 153 (1984).

{¶ 51} Only "[a] manifestly gross and fraudulent violation of the one-subjection provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 49, citing *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the syllabus. As long as common purpose or relationship exists between the topics, the mere fact that a bill embraces more than one topic will not be fatal. *Id.* It is the disunity of subject matter, rather than the aggregation of topics, that cause a bill to violate the one-subject rule. *Id.* The one-subject rule is not directed at plurality but at disunity in subject matter. *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 28.

{¶ 52} In this case, we must determine whether there was a violation of the one-subject rule within the context of an appropriations bill. *See Newburgh Heights,* 8th Dist. Cuyahoga No. 109106, 2021-Ohio-61, ¶ 66. "[T]he analysis of the one-subject rule with respect to appropriation bills can be complicated because appropriations bills 'encompass many items, all bound by the thread of appropriations.' " *Rumpke Sanitary Landfill, Inc. v. Ohio*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, ¶ 16 (1st Dist.2009), quoting *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 16, 711 N.E.2d 203 (1999).

{¶ 53} We agree with the 8th District's conclusion in *Newburgh Heights* that the exclusive-jurisdiction provisions in R.C. 1901.20(A)(1) and R.C. 1907.02(C) "directly relate to the authorization and conditions of the operation of photo-enforcement

programs." *Id.* at ¶ 67. Furthermore, Dayton's photo-enforcement program is explicitly related to transportation safety, which is also directly related to the stated purpose of the appropriations bill set forth in H.B. 62. *Id.* Accordingly we find that the trial court erred when it denied the State's motion for summary judgment, finding that that contested provisions R.C. 1901.20(A)(1) and R.C. 1907.02(C) in H.B. 62 violated the one-subject rule.

{¶ 54} The State's final assignment of error is sustained.

{¶ 55} The trial court's judgment is reversed insofar as it found that the legislature's enactment of R.C. 1901.20(A)(1) and R.C. 1907.02(C) violated the one-subject rule, and this matter is remanded to the trial court for proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

John C. Musto
Caitlyn Nestleroth Johnson
Zachary M. Holscher
Hon. Mary Katherine Huffman